FILED

DEC - 3 2013

Clerk, U.S. District and
Bankruptcy Courts

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JANE DOE                              )
                                      )
                                      )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        Civil Action No.:
                                      )
RES RESTAURANTS INC.                  )
d/b/a PRIMI PIATTI                    )
                                      )
Serve Registered Agent:              )        **JURY TRIAL DEMANDED**
Corporation Service Company           )
1090 Vermont Avenue, NW               )
Washington, DC 20005                  )
                                      )
        *and*                         )        Case: 1:13-cv-01919
                                      )        Assigned To : Sullivan, Emmet G.
SAVINO RECINE                         )        Assign. Date : 12/3/2013
1336 Potomac School Road              )        Description: Employment Discrim.
McLean, Virginia 22101                )
                                      )
        *and*                         )
                                      )
OSCAR ARNOLDO REYES                   )
13002 Eloise Avenue                   )
Rockville, MD 20853                   )
                                      )
                Defendants.           )
                                      )

## COMPLAINT

Plaintiff, Jane Doe, by and through her undersigned counsel, hereby brings this

Complaint against RES RESTAURANTS INC., d/b/a Primi Piatti ("Primi Piatti"), Savino

Recine ("Recine"), and Oscar Reyes ("Reyes") (collectively the "Defendants") for the

discriminatory and abusive treatment she faced while employed at Primi Piatti, which included,

*inter alia*, repeated rapes, assaults, stalking, harassing conduct, and verbal abuse, and which

4

ultimately resulted in her termination on the basis of sex, pregnancy, and protected EEO activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq* , ("Title VII") and District of Columbia Human Rights Act, D.C. Code § 2-01401.01 et seq. ("DCHRA"), and District of Columbia Law.  In support of this complaint, Plaintiff states as follows:

## JURSIDICTION AND VENUE

1.     Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1343 (a)(4), and 28 U.S.C. § 1367.  Plaintiff's Title VII cause of action arises under federal law, and her District of Columbia claims are so related to her federal claims that they form part of the same case or controversy.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the acts giving rise to this claim occurred in the District of Columbia, and because at all relevant times Defendants were conducting business or employed in the District of Columbia.

## PARTIES

3.     Plaintiff Jane Doe is an adult female currently residing in the District of Columbia.  At all relevant times, Plaintiff was an employee of Defendant Primi Piatti.

4.     Defendant Primi Piatti is a corporation registered to do business in the District of Columbia.  RES RESTAURANTS owns and/or operates Primi Piatti restaurant located at 2013 I Street, NW, Washington, DC 20006.  Defendant Primi Piatti is an employer within the meaning of the DCHRA and Title VII of the Civil Rights Act of 1964.

5.     Defendant Recine is an adult male.  On information and belief, Defendant Recine is, and at all relevant times was, the owner of Primi Piatti located at 2013 I Street, NW, Washington, DC 20006.

6.     Defendant Reyes is an adult male, who at all relevant times was an employee of Primi Piatti and its head chef.  At all relevant times, Defendant Reyes was Plaintiff's direct supervisor and responsible for management of the kitchen, including designating the hours that Plaintiff and other kitchen staff were required to work, and hiring and firing kitchen staff. Defendant Reyes had the authority to fire Plaintiff at all times relevant to this Complaint. Defendants Primi Piatti and Recine delegated this authority to Defendant Reyes.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.     Plaintiff timely filed a charge with the Equal Opportunity Employment Commission, Washington Field Office ("EEOC") on May 31, 2013.  Prior to filing this complaint, on December 2, 2013, Plaintiff requested a Notice of Right to Sue from the EEOC. More than one-hundred and eighty (180) days elapsed between the time Plaintiff filed her charge with the EEOC and her request for the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

8.     Plaintiff incorporates paragraphs 1 to 7 as if fully set forth herein.

9.     Plaintiff emigrated to the United States from El Salvador in or around 2003-2004.

## PLAINTIFF IS HIRED AT PRIMI PIATTI AND IS SEXUALLY HARASSED

10.     Plaintiff began working at Primi Piatti as a dishwasher after arriving in the United States from El Salvador.  She was under 21 years of age at the time and did not speak English.

11.     On information and belief, Primi Piatti was owned by Defendant Recine during the entire time Plaintiff worked there.  During the relevant time period, Defendant Recine was almost always present in the restaurant, and he frequently observed the activity of employees in the kitchen.

12.     Plaintiff was hired by Defendant Reyes.  On information and belief, Reyes had the authority to hire and fire Plaintiff, and he set the hours that she was permitted to work.  This authority was delegated to Reyes by Primi Piatti and Recine.

13.     As soon as she began working at Primi Piatti, Plaintiff was sexually harassed by Recine, who would often hug her inappropriately, touch her face, and ask her out on dates.

14.     Plaintiff was also treated in a demeaning manner by one of the cooks, David Umana-Perez ("Umana-Perez"), who often made obscene gestures and rude and sexual comments directed at her.

15.     Later, another cook, Hugo Valenzuela ("Valenzuela"), was hired, and he too harassed Plaintiff by making obscene gestures and sexual comments.

16.     On information and belief, Recine and Reyes were aware of and permitted the harassment of Plaintiff by Umana-Perez and Valenzuela.

17.     Shortly after she was hired by Primi Piatti, the head chef and Plaintiff's direct supervisor, Defendant Reyes, expressed a sexual interest in Plaintiff as well.  He began touching her, asking her out on dates, and making inappropriate comments, such as calling her his "*amor*" (love).

18.     Reyes was determined to coerce Plaintiff into a sexual relationship with him.  On information and belief, Reyes told Recine to stay away from Plaintiff because Plaintiff was "his." After Reyes "claimed" Plaintiff for himself, Recine's personal sexual harassment of Plaintiff stopped.

19.     On information and belief, Recine was aware of and permitted Reyes to continue to sexually harass Plaintiff.

20.     Reyes became increasingly more aggressive with Plaintiff. He would frequently corner Plaintiff in the restaurant and touch her breasts and backside when no one was looking. He repeatedly asked Plaintiff to date him and threatened her with termination and immigration action if she did not accept his advances. Reyes also offered Plaintiff alcohol after work, though she was under 21 years of age initially.

## PLAINTIFF IS RAPED FOR THE FIRST TIME BY REYES IN THE RESTAURANT PARKING LOT

21.     Soon after Plaintiff began working at Primi Piatti, Reyes told Plaintiff to stay after work and pressured her to drink alcohol. Plaintiff was under 21 at the time, and did not have experience with alcohol. He first gave her alcohol in the restaurant after closing, and then in his car while parked in Primi Piatti's parking lot.

22.     Reyes told Plaintiff that if she did not have sex with him he would fire her and report her to the immigration authorities.

23.     Reyes became aggressive, and despite Plaintiff's physical resistance and verbal refusals, he forced her into the backseat of the car and raped her.

## REYES BEGINS HIS PATTERN OF STALKING, THREATENING, AND REPEATEDLY RAPING PLAINTIFF

24.     Reyes raped Plaintiff in the Primi Piatti parking lot on three or four more occasions.

25.     Around this time, Reyes promoted Plaintiff from dishwasher to salad preparer, which provided her with a steady work schedule of six days a week, but also put her in more frequent contact with Reyes. The authority to promote Plaintiff was delegated to Reyes by Primi Piatti and Recine.

26.     The rapes by Reyes became more frequent.  Reyes began forcing Plaintiff to let him into her home after work and then forcing her to have sexual relations with him against her will in her own home.

27.     Reyes consistently told Plaintiff she would lose her job if she resisted him.  When she was under 21 years of age, Reyes also told Plaintiff that it was not legal for people under the age of 21 to work in the United States, and that if he fired her she would never find another job. Reyes also claimed that "Immigration" could catch her and throw her out of the country at any time if he stopped "protecting" her.  Having only a grade school education, and not understanding anything about the legal system in the United States, Plaintiff believed him.

28.     Reyes stalked Plaintiff.  He often followed her home from work, or forced her to let him drive her home after work.  He would also show up at Plaintiff's home on her days off, and would remain parked outside of her home for hours at a time.

29.     Plaintiff was petrified of Reyes.  She often would try to avoid him by leaving work early or hiding in the bathroom until he left the restaurant.  Plaintiff would stand on the toilet to hide from Reyes when he would enter the womens' bathroom to look for her.

30.     If Plaintiff was successful in avoiding Reyes's advances, he would punish her by taking her off of the schedule the following day or delaying her pay.

31.     Primi Piatti and Recine knew or should have known that Reyes was using his authority as the head chef and her supervisor to force Plaintiff to have sex with him and to retaliate against Plaintiff when she resisted him.

## REYES COERCES PLAINTIFF INTO HAVING AN ABORTION AND RAPES HER THE NEXT DAY

32.     As a result of Reyes repeatedly raping her, Plaintiff eventually became pregnant. Plaintiff told Reyes that she was pregnant, and he demanded that she get an abortion.  Plaintiff

did not know what an abortion was, and when Reyes explained to her that an abortion would terminate the pregnancy, Plaintiff told Reyes she did not want to have one.  Reyes insisted, claiming that he would fire her and call the immigration authorities if she did not go through with it.  Reyes also stated that he would not "ruin his life and family" because of her.

33.     Reyes drove Plaintiff to Planned Parenthood in the District of Columbia and demanded that she make an appointment to have an abortion.

34.     Plaintiff felt she had no other choice but to have the abortion.

35.     Reyes paid for the abortion.

36.     The day following the abortion Plaintiff did not go to work because she was emotionally traumatized and experiencing significant physical pain as a result of the procedure. After his shift, Reyes came to Plaintiff's home looking for sex.  Plaintiff told Reyes that she was in pain and begged him not to rape her, but Reyes pinned Plaintiff down and forced himself on her anyway.  Reyes left Plaintiff sobbing and in agony.

### REYES CONTINUES TO STALK, THREATEN, AND RAPE PLAINTIFF

37.     After the abortion, Reyes continued to rape Plaintiff on a regular basis, threatening that she would be fired if she did not give in to him.  The rapes occurred in her home up to three or four times a week, despite Plaintiff's efforts to avoid Reyes.

38.     Plaintiff tried everything she could think of to avoid Reyes, including hiding, walking home with other co-workers, and begging him to leave her alone.

39.     On the occasions when Plaintiff was able to successfully avoid Reyes, he would punish her by taking her off the work schedule, delaying her pay, and permitting Umana-Perez and Valenzuela to harass her at work.  Primi Piatti and Recine knew or should have known that Reyes was manipulating Plaintiff's schedule, delaying her pay, and neglecting to properly supervise Umana-Perez and Valenzuela to coerce her into having sex with him.

40.     Reyes also frequently came to Plaintiff's home very late at night, drunk.  If Plaintiff refused to let him in, he would disturb Plaintiff's co-tenants by making a lot of noise banging on the door, demanding that she let him in to end the disturbance.  Once inside, Reyes would physically force himself on Plaintiff.

41.     Plaintiff lived in constant fear of Reyes and his threats of retaliation.

42.     Plaintiff was terrified of losing her job and not being able to support herself.

43.     As a result of years of rape by Reyes, Plaintiff grew severely traumatized.  She began having panic attacks and feared she was losing her mind.

## RECINE OBSTRUCTS EEOC COMPLAINT FILED BY PLAINTIFF'S SISTER

44.     In March of 2010, Plaintiff's sister, then a recently-terminated Primi Piatti employee, filed a complaint with the EEOC based on Recine's sexual harassment of her (Plaintiff's sister) at Primi Piatti.  During the time Plaintiff's sister was employed at Primi Piatti, she was continually groped, grabbed, hugged, and inappropriately touched by Recine.  After being fired because she refused to give into Recine's advances, Plaintiff's sister filed an EEOC complaint.

45.     Fearful that Plaintiff would testify against Primi Piatti on behalf of her sister, Reyes terminated Plaintiff.  On information and belief, Plaintiff was terminated in an effort to hinder and obstruct the EEOC's investigation of Plaintiff's sister's claim.

46.     Because she would not be able to support herself without a job, Plaintiff asked Recine to allow her to come back to work.  Recine agreed to re-hire her, but only on the condition that she refuse to testify in her sister's case.

47.     When she returned to work, Recine made degrading remarks to Plaintiff, and called her names such as "*bastarda*" (bastard), "*estupida*" (stupid), "*basura*" (trash), and

"*immigrante*" (immigrant).  Recine also forbade Plaintiff from entering the restaurant through the front door.

48.     Shortly after returning to work, Plaintiff was able to overhear a portion of a staff meeting, during which Recine instructed all staff to refuse to speak with any EEOC investigators, or, if asked, to lie and say that Plaintiff's sister was "crazy."

## REYES RAPES PLAINTIFF FOR THE LAST TIME

49.     Plaintiff was in a state of trauma as a result of the years of regular rapes by Reyes. She continued to struggle to avoid him and to refuse his demands.

50.     At one point, after Plaintiff was able to avoid being raped by Reyes for several weeks, Reyes fired Plaintiff and told her that she could not come back to work unless and until she agreed to have sex with him again.

51.     For weeks, Reyes called Plaintiff nearly every day and told her that if she agreed to have sex with him she could have her job back.

52.     Plaintiff was unable to find another job.

53.     Eventually, Plaintiff was so desperate to avoid becoming homeless that she acquiesced to Reyes's demands.  Reyes came to Plaintiff's home the next morning and violently raped her.

54.     After this rape, Plaintiff determined to avoid Reyes at all costs, even if it meant losing everything.  This was the last time Reyes raped Plaintiff.

## PLAINTIFF IS SUBJECTED TO WORSENING HARASSMENT BY UMANA-PEREZ AND VALENZUELA AFTER PUTTING A STOP TO THE RAPES

55.     The longer Plaintiff was able to avoid the rapes by Reyes, the angrier Reyes became, and Plaintiff was subjected to increasingly worse treatment by Umana-Perez and Valenzuela at work.

56.     Reyes encouraged and instigated much of the harassment by Umana-Perez and Valenzuela in an attempt to get Plaintiff to give in to his advances.

57.     Umana-Perez and Valenzuela frequently took inappropriate photos of Plaintiff with their camera phones when she bent over to reach into the freezer.

58.     Umana-Perez and Valenzuela splashed hot oil from sizzling pans onto Plaintiff's arms and face.

59.     Umana-Perez and Valenzuela also made obscene gestures towards Plaintiff, and would physically trap her between them when she tried to pass through the kitchen to put salads in the window.

60.     At one point, Umana-Perez told Plaintiff that if he saw her on the street he would "take the shit out of her" and kill her.

61.     Umana-Perez also once slammed a knife onto a table near Plaintiff and stated that it "would be a good knife to cut [her] up with."

62.     Umana-Perez and Valenzuela constantly called Plaintiff by many derogatory, gender-based names, such as "*prostituta*" (prostitute) "*puta vieja*" (old whore), and "*mico podrido*" (rotten c\*nt).

63.     Primi Piatti, Recine, and Reyes knew or should have known that Umana-Perez and Valenzuela were acting in this manner.

## PLAINTIFF IS CONSTANTLY TORMENTED AND STALKED UNTIL SHE IS FIRED IN DECEMBER 2012

64.     Despite her consistent refusals, Reyes continued to sexually harass Plaintiff, follow her home, and threaten her job if she did not have sex with him.

65.     In addition to permitting and encouraging the severe harassment by Umana-Perez and Valenzuela, Reyes frequently took Plaintiff off the schedule or delayed her paycheck in an effort to force her to have sex with him.

66.     Plaintiff was in a state of severe emotional distress as a result of the constant sexual abuse and harassment she suffered for much of her time at Primi Piatti. The distress eventually grew intolerable after years of prolonged abuse.

67.     A number of times Plaintiff felt as though she was having a heart attack and checked herself into the emergency room. After examining her, the doctors determined that she was suffering from acute panic attacks.

68.     Plaintiff started speaking with a therapist in the summer of 2012.

69.     Shortly thereafter, Plaintiff met her current, long-term partner.

70.     In the fall of 2012, Plaintiff became pregnant.

71.     Plaintiff's co-workers apparently discovered she was pregnant, because they started to refer to her as "*la prena*" (the "pregnant one").

72.     While she was pregnant, Umana-Perez punched Plaintiff in the stomach during one of her shifts.

73.     In late November 2012, Plaintiff was bending over to reach into a freezer, when Umana-Perez took yet another photo of her behind, and rubbed his crotch against her backside. Plaintiff threatened to call the police if he did not stop harassing her.

74.     On the day of her next shift, December 3, 2012, Reyes called Plaintiff and told her that she was fired.

75.     Plaintiff believed it when Reyes and others at Primi Piatti told her that she had no rights because she was undocumented at the time.  Plaintiff was unaware of any way to stop the harassment.

76.     At no point during her employment at Primi Piatti was Plaintiff ever provided with a harassment policy or information about her rights as an employee.

77.     While she worked at Primi Piatti, Plaintiff lived under constant fear that Reyes would cause her to be deported if she were to try to stop the abuse she was suffering.  Defendants also caused her to fear that the physical and sexual abuse she suffered at the hands of Reyes, Umana-Perez, and Valenzuela would worsen if she tried to stop it.  These fears persisted throughout her employment at Primi Piatti.

78.     Under the crippling emotional distress she suffered during her employment at Primi Piatti, Plaintiff was unable to understand that she had any legal rights or recourse against Primi Piatti or her abusers until after her employment at Primi Piatti was terminated.

79.     Because of Defendants' threatening behavior, Plaintiff continually feared for her physical safety and economic well-being if she were to take steps to report the abusive conduct to the police or other authorities.

## COUNT I

### (Hostile Work Environment in Violation of Title VII - Primi Piatti)

80.     Plaintiff incorporates paragraphs 1 to 79 as if fully set forth herein.

81.     Defendant Primi Piatti is an employer within the meaning of Title VII.

82.     Plaintiff was an employee within the meaning of Title VII.

83.     Through the actions described above, Defendants subjected Plaintiff to a hostile work environment because of her sex and pregnancy that was unwelcome and severe or pervasive enough to alter the conditions of her employment.

84.     Primi Piatti is liable for the discriminatory conduct described above, because the actions were committed by Plaintiff's supervisors with the authority to make hiring and firing decisions, and those supervisors also had actual and/or constructive knowledge of the conduct committed by other employees.

85.     The harassment suffered by Plaintiff included adverse employment actions, including Plaintiff's termination.

86.     As a direct and proximate result of the discriminatory conduct described above, Plaintiff has suffered substantial injury, for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

87.     Through Defendant Primi Piatti's own actions and the actions of its employees, agents, and/or representatives described above, Defendant Primi Piatti acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT II

### (*Quid Pro Quo* Sexual Harassment in Violation of Title VII – Primi Piatti)

88.     Plaintiff incorporates paragraphs 1 to 87 as if fully set forth herein.

89.     Defendant Primi Piatti is an employer within the meaning of Title VII.

90.     Plaintiff was an employee within the meaning of Title VII.

91.     As a result of the conduct described above, Plaintiff was subjected to *quid pro quo* sexual harassment in violation of Title VII, due to the conditioning of tangible employment benefits on Plaintiff's submission to Defendant Reyes's sexual advances.  Plaintiff's refusal to submit to Defendant Reyes's sexual advances resulted in adverse consequences, such as Defendant Reyes delaying Plaintiff's pay, removing Plaintiff from the work schedule, and permitting and encouraging severe harassment of Plaintiff by Umana-Perez and Valenzuela.

92.     The harassment suffered by Plaintiff included adverse employment actions, including Plaintiff's termination.

93.     As a direct and proximate result of the discriminatory conduct described above, Plaintiff has suffered substantial injury for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

94.     Through Defendant Primi Piatti's own actions and the actions of its employees, agents, and/or representatives described above, Defendant Primi Piatti acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT III

### (Retaliation in Violation of Title VII – Primi Piatti)

95.     Plaintiff incorporates paragraphs 1 to 94 as if fully set forth herein.

96.     Defendant Primi Piatti is an employer within the meaning of Title VII.

97.     Plaintiff was an employee within the meaning of Title VII.

98.     Plaintiff acted in opposition to, and fought against, the discrimination that she was suffering by resisting and refusing to submit to Defendant Reyes's sexual advances.

99.     As a result, Plaintiff was subjected to retaliation in violation of Title VII. Plaintiff's hours were decreased and her pay was delayed.  Plaintiff was also subjected to an increase in the severity of the harassment and assaults she suffered while at work.

100.    Plaintiff also suffered retaliation when she was terminated (the first time) because her sister filed an EEOC employment discrimination charge against Defendant Primi Piatti.

101.    Plaintiff was only permitted to return to work if she agreed not to participate in her sister's EEOC action.  Plaintiff was then subjected to an increase in the severity of the harassment and assaults she suffered while at work.

102.    Participation in an EEOC investigation is protected EEO activity under Title VII.

103.    The retaliation suffered by Plaintiff included adverse employment actions, including Plaintiff's termination.

104.    As a direct and proximate result of the discriminatory conduct described above, Plaintiff has suffered substantial injury for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

105.    Through Defendant Primi Piatti's own actions and the actions of its employees, agents, and/or representatives described above, Defendant Primi Piatti acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT IV

### (Pregnancy Discrimination in Violation of Title VII – Primi Piatti)

106.    Plaintiff incorporates paragraphs 1 to 105 as if fully set forth herein.

107.    Defendant Primi Piatti is an employer within the meaning of Title VII.

108.    Plaintiff was an employee within the meaning of Title VII.

109.    Plaintiff was unlawfully terminated on the basis of her pregnancy.

110.    As a direct and proximate result of the discriminatory conduct described above, Plaintiff has suffered substantial injury for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

111.    Through Defendant Primi Piatti's own actions and the actions of its employees, agents, and/or representatives described above, Defendant Primi Piatti acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT V

### (Hostile Work Environment in Violation of DCHRA - Primi Piatti)

112.    Plaintiff incorporates paragraphs 1 to 111 as if fully set forth herein.

113.    Defendant Primi Piatti is an employer within the meaning of DCHRA.

114.    Plaintiff was an employee within the meaning of DCHRA.

115.    Through the actions described above, Defendants subjected Plaintiff to a hostile work environment because of her sex and/or pregnancy that was unwelcome and severe or pervasive enough to alter the conditions of her employment.

116.    Primi Piatti is liable for the discriminatory conduct described above, because the actions were committed by supervisors with the authority to make hiring and firing decisions, and those supervisors had actual and/or constructive knowledge of the conduct committed by other employees.

117.    The harassment suffered by Plaintiff included adverse employment actions, including Plaintiff's termination.

118.    As a direct and proximate result of the discriminatory conduct described above, Plaintiff has suffered substantial injury for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

119.    Through Defendant Primi Piatti's own actions and the actions of its employees, agents, and/or representatives described above, Defendant Primi Piatti acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT VI

### (*Quid Pro Quo* Sexual Harassment in Violation of DCHRA – Primi Piatti)

120.    Plaintiff incorporates paragraphs 1 to 119 as if fully set forth herein.

121.    Defendant Primi Piatti is an employer within the meaning of DCHRA.

122.    Plaintiff was an employee within the meaning of DCHRA.

123.    As a result of the conduct described above, Plaintiff was subjected to *quid pro quo* sexual harassment in violation of DCHRA due to the conditioning of tangible employment benefits on Plaintiff's submission to Defendant Reyes's sexual advances.  Plaintiff's refusal to

submit to Defendant Reyes's sexual advances resulted in adverse consequences, such as Defendant Reyes delaying Plaintiff's pay, removing Plaintiff from the schedule, and permitting and encouraging severe harassment of Plaintiff by Umana-Perez and Valenzuela.

124.    The harassment suffered by Plaintiff included adverse employment actions, including Plaintiff's termination.

125.    As a direct and proximate result of the discriminatory conduct described above, Plaintiff has suffered substantial injury for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

126.    Through Defendant Primi Piatti's own actions and the actions of its employees, agents, and/or representatives described above, Defendant Primi Piatti acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT VII

### (Retaliation in Violation of DCHRA – Primi Piatti)

127.    Plaintiff incorporates paragraphs 1 to 126 as if fully set forth herein.

128.    Defendant Primi Piatti is an employer within the meaning of DCHRA.

129.    Plaintiff was an employee within the meaning of DCHRA.

130.    Plaintiff acted in opposition to, and fought against, the discrimination that she was suffering by refusing to submit to Defendant Reyes's sexual advances.

131.   As a result, Plaintiff was subjected to retaliation in violation of DCHRA. Plaintiff's hours were decreased and her pay was delayed.  Plaintiff was also subjected to an increase in the severity of the harassment and assaults she suffered while at work.

132.   Plaintiff also suffered retaliation when she was terminated because her sister filed an EEOC employment discrimination charge against Defendant Primi Piatti.

133.   Plaintiff was only permitted to return to work if she agreed not to participate in her sister's EEOC action.  Plaintiff was then subjected to an increase in the severity of the harassment and assaults she suffered while at work.

134.   The retaliation suffered by Plaintiff included adverse employment actions, including Plaintiff's termination.

135.   As a direct and proximate result of the discriminatory conduct described above, Plaintiff has suffered substantial injury for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

136.   Through Defendant Primi Piatti's own actions and the actions of its employees, agents, and/or representatives described above, Defendant Primi Piatti acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT VIII

### (Pregnancy Discrimination in Violation of DCHRA – Primi Piatti)

137.   Plaintiff incorporates paragraphs 1 to 136 as if fully set forth herein.

138.   Defendant Primi Piatti is an employer within the meaning of DCHRA.

139.    Plaintiff was an employee within the meaning of DCHRA.

140.    Plaintiff was unlawfully terminated on the basis of her pregnancy.

141.    As a direct and proximate result of the discriminatory conduct described above, Plaintiff has suffered substantial injury for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

142.    Through Defendant Primi Piatti's own actions and the actions of its employees, agents, and/or representatives described above, Defendant Primi Piatti acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

**COUNT IX**

**(Respondeat Superior – Primi Piatti)**

143.    Plaintiff incorporates paragraphs 1 to 142 as if fully set forth herein.

144.    At all times relevant to the events described above, Defendants Recine and Reyes, and other employees of Primi Piatti were employed by and/or were agents of Defendant Primi Piatti.

145.    Defendant Primi Piatti is responsible for the conduct of its employees and agents committed in the scope of their employment.

146.    Defendants Recine and Reyes and other employees of Primi Piatti were acting within the scope of their employment as employees, agents, and/or representatives of Defendant Primi Piatti when they harmed Plaintiff as described in this Complaint.

147.    As a direct and proximate result of the conduct described above, Plaintiff suffered substantial injury for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

## COUNT X

### (Negligence – Primi Piatti, Recine, and Reyes)

148.    Plaintiff incorporates paragraphs 1 to 147 as if fully set forth herein.

149.    Defendants Primi Piatti, Recine and Reyes had a duty to exercise reasonable care to avoid harm to Plaintiff caused by employees of Primi Piatti under their supervision.

150.    Defendants Primi Piatti, Recine and Reyes knew or should have known of the physical and verbal harassment and sexual assaults suffered by Plaintiff at the hands of Primi Piatti employees described herein.

151.    Defendants Primi Piatti, Recine and Reyes failed to exercise reasonable care in the hiring, retention, training and supervision of employees of Primi Piatti.

152.    As a direct and proximate result of the failure by Defendants Primi Piatti, Recine and Reyes to exercise reasonable care, Plaintiff suffered substantial injury, for which she should be compensated.  Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

## COUNT XI

### (Assault – Reyes)

153.    Plaintiff incorporates paragraphs 1 to 152 as if fully set forth herein.

154.    Through the conduct described above, Defendant Reyes intended to and did cause harmful or offensive contact with Plaintiff on multiple occasions.

155.    Through the conduct described above, Defendant Reyes also intended to and did repeatedly cause Plaintiff to suffer the imminent apprehension of harmful or offensive contact.

156.    Plaintiff repeatedly suffered harm caused by Defendant Reyes' harmful or offensive contact or the imminent apprehension thereof.  As a result, Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

157.    Defendant Reyes acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well being in carrying out this conduct.

## COUNT XII

### (Battery –Reyes)

158.    Plaintiff incorporates paragraphs 1 to 157 as if fully set forth herein.

159.    Through the conduct described above, Defendant Reyes intended to and did cause harmful or offensive contact with Plaintiff on multiple occasions.

160.    Plaintiff repeatedly suffered harm caused by harmful or offensive contact by Defendant Reyes for which she should be compensated.  As a result, Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to,

economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the deprivation of her rights to equal employment opportunities.

161.    Defendant Reyes acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well being in carrying out this conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter final judgment finding the Defendants jointly and severally liable to Plaintiff and enter an Order as follows:

a.    Order granting judgment in favor of Plaintiff and against all Defendants;

b.    Order awarding Plaintiff any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions.  Plaintiff should be accorded, *inter alia*, the pay and benefits illegally delayed and/or withheld from the date she first suffered harassment and/or retaliation at the hands of Defendants;

c.    Order awarding punitive damages to Plaintiff for Defendants' willful, deliberate, malicious, and outrages conduct, and to deter Defendants from engaging in such misconduct in the future;

d.    Order awarding damages for the pain, suffering, and humiliation caused to her by the actions of Defendants;

e.    Order awarding costs of this litigation, to include expert fees and reasonable attorney's fees; and

f.    Order granting Plaintiff such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully Submitted,

Dated: 2 December 2013

Joseph G. Davis (DC Bar #441479)
Ariel Rayman (DC Bar #479375)
Anthony Juzaitis (DC Bar #989777)
Janine Martin (DC Bar #992913)
Anna DiSalvo (DC Bar #1004478)*
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
Phone: 202-303-1000
Fax: 202-303-2000
Jdavis@willkie.com

Matthew K. Handley (DC Bar# 489946)
Dennis A. Corkery (DC Bar# 1016991)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
Phone:  202-319-1000
Fax:  202-319-1010
Matthew_handley@washlaw.org;
Dennis_corkery@washlaw.org

*Application for admission to District Court
pending